FILED
JAN 12 2017
Clerk, U. S. District Court
Eastern District of Tennessee
At Knoxville

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF BLACK SAMSUNG CELL PHONE MODEL SM-B311V, MEID: A0000047606DD2 CURRENTLY LOCATED AT THE FEDERAL BUREAU OF INVESTIGATION, 1501 DOWELL SPRINGS BOULEVARD, KNOXVILLE, TENNESSEE. | 3:17-MJ-2003 |

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, K. Todd Gilreath, being duly sworn, state the following information to be true to the best of my knowledge, information and belief:

1. I am a Task Force Officer with the Federal Bureau of Investigation ("FBI") and have been so assigned for approximately nineteen years. I am currently assigned to the Knoxville Field Office of the FBI and am assigned to the FBI Safe Streets Task Force ("SSTF"). I am a sworn police officer for the City of Knoxville, Tennessee, and have been so employed since January 1993. I am currently an Investigator with Knoxville Police Department's ("KPD") Organized Crime Unit and have served in this capacity for approximately twenty-one years. During my tenure as an FBI Task Force Officer and KPD Police Officer and Investigator, I have investigated numerous crimes including, but not limited to, Hobbs Act robberies and weapons violations.

2. Except as noted, all of the information contained in this affidavit is either known to me personally or has been told to me by other law enforcement officials.

### IDENTIFICATION OF THE DEVICE TO BE EXAMINED

3. This affidavit is being offered in support of a Search Warrant to search a black Samsung cell phone Model SM-B311V, MEID: A0000047606DD2 (the "Device"), for evidence of a Hobbs Act Robbery in violation of Title 18, United States Code, Section 1951.

1

# INVESTIGATION

4.  On November 22, 2016, at approximately 5:21 p.m., Cellular Sales, located at 4501 Chapman Highway, Knoxville, Tennessee, business telephone number (865) 291-2355, was robbed by four black males brandishing pistols. Initially, two of the suspects entered the store and engaged a salesperson in a discussion about purchasing a cellular telephone. While the sales person was diverted, two additional suspects entered the store and displayed guns.

5.  While inside, the four robbers donned blue latex gloves and directed three employees and one customer to the back of the store into a "safe room." Once inside the safe room, the robbers restrained each victim with "zip-ties." Additionally, the robbers forced a store employee to show them where the store video surveillance system was maintained. Upon discovering its location, the robbers unsuccessfully attempted to destroy the surveillance system. Video surveillance was later recovered by KPD and affirmed the eyewitness accounts of the robbery and descriptions of the robbers.

6.  Following their attempts to destroy the surveillance system, the robbers grabbed multiple new cellular telephones, valued at approximately $150,000 in United States currency, placed them in a black garbage bag and fled the store. 3SI Security was directly notified by the victim store and a representative from the security company notified Knox County E-911 that the store had been robbed and they were conducting a "live track" of a "bait phone" which was taken by the robbers during the robbery. The security company, in coordination with E-911, directed KPD officers to the location of the robbers' getaway vehicle by tracking the stolen bait phone. Upon locating the getaway vehicle, uniformed KPD officers attempted to initiate a traffic stop which resulted in a vehicle pursuit.

7.  The getaway vehicle was identified as a silver Buick Enclave rented by PIERRE JORDAN from Enterprise Rent-A-Car in Rockford, Illinois. During its attempt to evade law

2

enforcement, the getaway vehicle crashed into another vehicle at Rowan Road and Cedar Lane in Knoxville, Tennessee. The robbers exited the vehicle and fled on foot from the accident scene. Shortly thereafter, three of the robbers were taken into custody by KPD officers.

8. The cellular telephones stolen from the victim business were located in the getaway vehicle in a plastic bag, along with two 9 mm pistols (one of which was reported stolen from Rockford, Illinois), zip-ties, blue latex gloves and other clothing items observed to be worn by the robbers in the surveillance video, and three additional cellular telephones.

9. At the time of the robbery, Cellular Sales, the victim business, was actively engaged in interstate commerce. General Counsel for Cellular Sales, Reese K. Thomas, advised cellular telephones purchased for retail sale by the victim business were bought from multiple locations, to include Baltimore, Maryland, and Branchburg, New Jersey.

10. The arrested robbers were identified as follows:

A) SIR TYRONE LOVE, a black male, last known address 3204 Darwood Drive, Rockford, Illinois 61101; Love has been charged by the State of Tennessee with one count of Aggravated Robbery, four counts of Aggravated Kidnapping, and one count of evading arrest.

B) DEANGELO LEMONT DOSS, a black male, last known address 917 Tenth Avenue, Rockford, Illinois 61104; Doss has been charged by the State of Tennessee with one count of Aggravated Robbery, four counts of Aggravated Kidnapping, and one count of resisting arrest.

C) PIERRE LAMAR JORDAN, a black male, last known address 2406 Auburn Street, Rockford, Illinois 61103. Jordan has been charged by the State of Tennessee with one count of Aggravated Robbery and four counts of Aggravated Kidnapping.

11. Based upon all of the above, your affiant believes that probable cause exists to search the Device and is likely to contain information relative to the robbery.

12. Based on my education, experience, and investigation, it is my opinion that the Device contains electronically or digitally stored data, including photographs, text messages, telephone numbers, phone book information, messages sent or received with dates and times of

3

messages, telephone numbers received or called with dates and times of calls, and recorded voice messages related to the robbery.

13. The Device is currently in storage at the FBI, 1501 Dowell Springs Boulevard, Knoxville, Tennessee. In my training and experience, I know that the Device has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the Device first came into the possession of the FBI.

## TECHNICAL TERMS

14. Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books"; sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

4

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical

representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP

6

addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

g. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

h. Based on my training, experience, and research, I know that the Device has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

### ELECTRONIC STORAGE AND FORENSIC ANALYSIS

15. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

16. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crime described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

17. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the Device to human inspection in order to determine whether it is evidence described by the warrant.

18. *Manner of execution.* Because this warrant seeks only permission to examine the Device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is a reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

19. Based upon the foregoing information, there is probable cause to believe that examination of the Device described in Attachment A sought by this search warrant represents evidence of a crime against the United States of America, that is, evidence of the Hobbs Act Robbery of Cellular Sales, located at 4501 Chapman Highway, Knoxville, Tennessee that occurred on November 22, 2016, in violation of Title 18, United States Code, Section 1951.

FURTHER AFFIANT SAYETH NAUGHT.

Executed this 10 day of January, 2017, at Knoxville, Tennessee.

K. Todd Gilreath
Task Force Officer
Federal Bureau of Investigation

Subscribed and sworn to before me
on this 10 day of January, 2017.

H. Bruce Guyton
UNITED STATES MAGISTRATE JUDGE

# ATTACHMENT A

The property to be searched is a black Samsung cell phone Model SM-B311V, MEID: A0000047606DD2, recovered from the getaway vehicle identified as a silver Buick Enclave rented by PIERRE JORDAN from Enterprise Rent-A-Car in Rockford, Illinois. The cell phone is in the lawful possession of FBI and is currently located at 1501 Dowell Springs Boulevard, Knoxville, Tennessee 37909.

This warrant authorizes the forensic examination of the cell phone for the purpose of identifying the electronically stored information described in Attachment B.

**KNOXVILLE POLICE DEPARTMENT — GENERAL PROPERTY ENVELOPE**

- [✓] Evidence  [ ] Found  [ ] Safekeeping  [ ] Stolen
- Case #: 16-048399  Type of Call: 10-52
- Name: Love, Sir Tyrone  D.O.B: Unknown
- [ ] Owner  [✓] Suspect  [ ] Finder
- Charge: ___
- [ ] Misdemeanor  [ ] Felony  [ ] Warrant #: ___
- Date Found: 11-22-16  Time Found: 1918
- Location Found: Cedar Ln @ Power
- Confiscated By: B. Fine  Officer ID#: C652
- Supervisor: ___  ID#: ___
- Detail Description: [5] - Black Samsung Flip phone
- Entered and Sealed By: B. Fine  ID#: C652
- Date: 11-23-16  Time: 0222  Witnessed By: ___
- Property Unit Use Only: Received By: [illegible]  Date: [illegible]  Sealed? [✓] Yes [ ] No

## ATTACHMENT B

Electronically or digitally stored data, including photographs, text messages, telephone numbers, phone book information, messages sent or received with dates and times of messages, telephone numbers received or called with dates and times of calls, recorded voice messages, and any other information related to the Hobbs Act Robbery of Cellular Sales, located at 4501 Chapman Highway, Knoxville, Tennessee that occurred on November 22, 2016, in violation of Title 18, United States Code, Section 1951.